## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-cv-81214-BB

BALTHAZAR MANAGMENT, LLC, a Florida
Limited Liability Company,

      Plaintiff,

vs.

BEALE STREET BLUES COMPANY, INC., a
Tennessee-For-Profit   Corporation;   BEALE
STREET BLUES COMPANY – WEST PALM
BEACH, LLC, a Florida Limited Liability
Company; STEWART THOMAS PETERS, an
individual;   ELIZABETH   PETERS,   an
individual; and TODD BECKER, an individual,

      Defendants.

_____/

### COURT'S INSTRUCTIONS TO THE JURY

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes

called deliberations.

### The Duty to Follow Instructions – Corporate Party Involved

Your decision on each of the issues must be based only on the evidence presented

throughout this trial. You must not be influenced in any way by either sympathy for or prejudice

against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation – like all other persons – stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

### Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted throughout the trial in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You can consider evidence that is both direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

### Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1.   Did the witness impress you as one who was telling the truth?

2.   Did the witness have any particular reason not to tell the truth?

3.   Did the witness have a personal interest in the outcome of the case?

4.   Did the witness seem to have a good memory?

5.   Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6.   Did the witness appear to understand the questions clearly and answer them directly?

7.   Did the witness's testimony differ from other testimony or other evidence?

## Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony that witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## Expert Witness

When scientific, technical or other specialized knowledge might be helpful to the jury, a person who has special training or experience in that field is allowed to state an opinion about the matter. This person is referred to as an "expert witness." As with any other witness's testimony, you must decide for yourself whether to rely upon an expert witness' opinion. The expert witnesses who testified in this case did so to assist you in reaching a decision about these issues.

You have heard testimony of two different expert witnesses who have been called to give their opinions about certain issues in this case. Balthazar had an expert testify about the amount of its damages: her name was Sheri Fiske Schultz. Defendants also had an expert testify: his name was David DelBrocco.

The testimony of these expert witnesses might have conflicted. You must remember that you are the sole trier of the facts, and their testimony relates to questions of fact. The way you

resolve these conflicts is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses.  You may give the testimony of each expert witness the weight you think it deserves in light of all the evidence.

### Responsibility for Proof – Plaintiff's and Counter-Plaintiff's Claims

In this case it is the responsibility of Balthazar to prove all but one of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."  However, Balthazar must prove its civil theft claim by a different standard, which I will explain to you in a moment.

A "preponderance of the evidence", which is the burden of proof for all of Balthazar's claims except civil theft, simply means an amount of evidence that is enough to persuade you that Balthazar's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff.

When more than one claim is involved, as it is here, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

Likewise, it is the responsibility of Beale Street West Palm to prove its counterclaims by a "preponderance of the evidence."  If the proof fails to establish any essential part of Beale Street West Palm's counterclaims by a preponderance of the evidence, you should find for Balthazar as to that claim.

In addition, Balthazar has the burden of proving its claim for civil theft by "clear and convincing" evidence. This is a higher standard of proof than proof by a preponderance of the evidence, which applies to all of Balthazar's other claims. Clear and convincing evidence means the evidence must persuade you that the claim or defense is highly probable or reasonably certain.

### Responsibility for Proof – Affirmative Defenses

In this case, the Defendants assert the affirmative defenses of Set-off, BM's actions created an impossibility of performance, BM repudiated any agreement by their actions, BM has waived or is estopped from seeking any recovery, BM's actions were negligent and contributed to any claimed loss, BM assumed the risk associated with a business transaction, and that BM can not recover for any loss due to its unclean hands.

Even if Balthazar proves its claims by a preponderance of the evidence (or by clear and convincing evidence for civil theft), the Defendants can prevail in this case if they prove an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, as it is here, you should consider each one separately.

I caution you that the Defendants do not have to disprove Balthazar's claims, but if the Defendants raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

Likewise, in this case Balthazar asserts the affirmative defenses of set-off, contributory negligence, unclean hands, failure to mitigate damages, waiver or estoppel, and assumption of risk. Even if the Counter-Plaintiff, Beale Street West Palm, proves its counterclaims by a

preponderance of the evidence, Balthazar can prevail on the counterclaims if it proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, as it is here, you should consider each one separately.

I caution you that Balthazar does not have to disprove Beale Street West Palm's counterclaims, but if Balthazar raises an affirmative defense, the only way Balthazar can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

## Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case. The following facts have been sipulated by the parties:

1.     This action stems from the dealings and disputes regarding a restaurant and live music venue located in City Place in West Palm Beach, Florida.

2.     Beale Street Corporate is a Tennessee For-Profit-Corporation with its principle place of business in Memphis, Tennessee. Beale Street Corporate also does business in Palm Beach County, Florida.

3.     Beale Street Corporate and its affiliates own and operate restaurants within the United States and on cruise lines.

4.     Beale Street West Palm Beach is a Florida limited liability company that was established in 2009 for the purpose of conducting business in connection with a restaurant, bar, and event venue, originally named "BB King's Blues Club," in CityPlace, located in West Palm Beach, Florida.

5.      Beale Street West Palm Beach entered into a lease with CityPlace Retail, LLC, dated April 3, 2009, to lease the restaurant, bar, and event venue space in CityPlace, which space was operated originally as "BB King's Blues Club," later as "Lafayette's," and eventually as "Bowery Palm Beach." The lease was modified by that certain First Amendment to Lease, dated October 31, 2010, that certain Second Amendment to Lease, dated March 8, 2011, that certain Third Amendment to Lease, dated September 10, 2012, and that certain Fourth Amendment to Lease, dated September 2015 (all collectively, the "Lease").

6.      In approximately 2014, some renovation occurred in BB King's Blues Club and it was rebranded as "Lafayette's."

7.      Mr. Peters is an individual who resides in Shelby County, Tennessee, is a member of L & T Investment, LLC, and has been at all relevant times hereto, the President of Beale Street Corproate and Managing Member of Beale Street West Palm Beach.

8.      Ms. Peters is an individual who resides in Shelby County, Tennessee, is a member of L & T Investments, LLC, and has been at all relevant times hereto, an employee of Beale Street Corproate.

9.      Becker is an individual who resides in Shelby County, Tennessee, and at all times relevant to hereto, Becker was and continues to be the Chief Financial Officer of Beale Street Corporate.

10.     Balthazar is a Florida limited liability company that was established in 2016 for the purpose of conducting business in connection with a restaurant and event venue in CityPlace, located in West Palm Beach, Florida.

11.     In early 2016, Joe Cirigliano, Karena Kefalas, and Michael Covino discussed a potential business opportunity vis-à-vis Beale Street West Palm Beach.

12.     The consultant introduced Cirigliano and Kefalas to Mr. Peters.

13.     Mr. Peters met with Kefalas and Cirigliano and discussed Lafayette's, the bar, restaurant, and music room that Mr. Peters was operating in CityPlace, located in downtown West Palm Beach, Florida (the "Restaurant").

14.     At the time Cirigliano and Kefalas met Mr. Peters, Cirigliano and Kefalas were owner/operators of "The Beach Bar," a restaurant in St. John, United States Virgin Islands that included an indoor portion of the restaurant and bar known as the "Bowery," and which operated from approximately November 2015 through October 2016. As the owner/operators of "The Beach Bar," Cirigliano and Kefalas were featured on reality TV.

15.     On June 28, 2016, Cirigliano and Kefalas created the limited liability company, Balthazar, in the state of Florida, for the purpose of the joint venture which is the subject of this action.

16.     Cirigliano and Kefalas first visited the Restaurant in May 2016, at which time the Restaurant was operating as "Lafayette's."

17.     Beale Street Corporate and/or Beale Street West Palm Beach agreed that Balthazar would be responsible for on-site operations and management of the Restaurant; and, Balthazar did in fact manage and operate the Restaurant from August 2016 through mid-July 2017.

18.     Beale Street West Palm Beach was the entity through which Balthazar and Beale Street Corproate would operate a joint venture.

19.     Cirigliano and Kefalas spent time with a representative of The Related Group, the landlord of CityPlace, to learn more about the venue and the local market in order to form a business strategy for the Restaurant.

20.    Mason Jambon was the Chief Operating Officer of Beale Street Corporate

21.    On August 23, 2016, Balthazar met Mr. Peters at the Restaurant.

22.    In August 2016, the Restaurant was closed for business, and did not reopen to the general public until December 16, 2016, when it reopened as "Bowery Palm Beach." Bowery Palm Beach contained both a full-service restaurant named "Bowery Coastal," and a music hall named "Bowery LIVE."

23.    Beale Street West Palm Beach agreed to the rebranding of the Restaurant, agreed to rename Lafayette's as "Bowery Palm Beach," agreed to name the full-service restaurant "Bowery Coastal" and agreed to name the music venue "Bowery LIVE."

24.    John Valentino is the Senior Vice President of AEG Presents, LLC, located in the West Palm Beach office. Mr. Peters invited John Valentino to the re-opening of Bowery Palm Beach, which took place on December 16, 2016.

25.    As part of the marketing and advertising for "Bowery Palm Beach, Balthazar, Mr. Peters, Ms. Peters, Beale Street Corporate, and/or Beale Street West Palm Beach agreed that "Bowery Coastal" would be the primary name used in marketing and advertising the Restaurant, including but not limited to, its use for the main signage in CityPlace and on its menus.

26.    On or about January 3, 2017, A. Neal Graham, counsel for Beale Street West Palm Beach, filed an Application for Registration of Fictitious Name on behalf of Beale Street West Palm Beach for "Bowery Palm Beach."

27.    On or about February 15, 2017, Balthazar filed an Application for Registration of Fictitious Name for "Bowery Palm Beach."

28.     The General Manager of Lafayette's, Sean McHugh, stayed on after the Restaurant closed for business in August 2016, and he continued to work in the Restaurant after it re-opened as Bowery Palm Beach.

29.     During the period from the Restaurant's closure in August 2016 to its re-opening in December 2016, Balthazar was responsible for day-to-day activity relating to renovations and rebranding of the Restaurant.

30.     Neither Beale Street Corporate nor Beale Street West Palm Beach ever issued any checks to Kefalas or to Cirigliano for salary, and never issued any checks to Balthazar for a management fee.

31.     During the rebranding from Lafayette's to Bowery Palm Beach, Balthazar paid certain expenses of the Restaurant.

32.     During the rebranding from Lafayette's to Bowery Palm Beach, Beale Street Corporate paid certain expenses of the Restaurant.

33.     Balthazar increased the payroll of the Restaurant by retaining additional managers.

34.     Beale Street Corporate approved of the rebranded concept for the Restaurant.

35.     Around January 2017, Balthazar expressed dissatisfaction to Beale Street Corproate with the fact that it did not have access to the Restaurant credit card account or the income from the Restaurant credit card accounts.

36.     A meeting took place in West Palm Beach on March 17, 2017 between Mr. Peters, Becker, Covino, Dennis Pilotti, Kefalas and Cirigliano. Ms. Peters was in town; however, she did not attend the actual meeting.

37.     During the March 17, 2017 meeting, Beale Street Corporate and Beale Street West Palm Beach agreed that the total expenditures to the Restaurant by Balthazar, as of March 7, 2017, totaled $542,511.43. During the same meeting, the attendees also discussed a sale of the Restaurant.

38.     Balthazar, Beale Street West Palm Beach, and Beale Street Corproate memorialized their discussions at the March 17, 2017 meeting in a document signed by Balthazar, Beale Street West Palm Beach, and Beale Street Corporate. The signed document expressly states that it is "non-binding and will be memorialized through the final execution of the Operating Agreement."

39.     After the March 17, 2017 meeting, Balthazar continued to operate the Restaurant..

40.     On June 26, 2017 Balthazar Management notified Beale Street Corporate – through counsel – that Balthazar intended to cease its management of the Restaurant on July 6, 2017.

41.     On June 29, 2017, counsel for Balthazar was advised that Mr. Peters, on behalf of Beale Street West Palm Beach, had instructed Neal A. Graham (corporate counsel for Beale Street Corporate and Beale Street West Palm Beach) to inform Balthazar that no parties or events should be booked past July 6, 2017.

42.     After June 29, 2017, but before ceasing management, Balthazar terminated employees, contracts, and canceled future event reservations.

43.     On or about July 6, 2017, Balthazar ceased managing the Restaurant and returned control of the premises back to Beale Street West Palm Beach.

44.     Mr. Peters, Beale Street Corporate, and/or Beale Street West Palm Beach closed the Restaurant once Balthazar returned control of the premises back to Beale Street West Palm Beach.

### The Court's Prior Determination – Alter Ego or Veil Piercing

The Court has previously determined that Balthazar is permitted to employ the doctrines known as "alter ego" or "veil piercing" to assert liability against Mr. Peters, Ms. Peters, and Beale Street Corporate for the conduct of Beale Street West Palm.

Under our free-enterprise economic system, the law permits – even encourages – people to form corporations as a way to attract stockholder investments. Stockholders can invest their money in corporate enterprises without risking individual liability for corporate acts and transactions. In return, society gets the benefit of jobs and other commercial activity that corporate businesses create. So, in most cases, the status of a corporation as a separate legal entity apart from its owners or stockholders must be respected and preserved.

Balthazar claims that Beale Street West Palm was Mr. Peters', Ms. Peters', and/or Beale Street Corporate's mere instrument or tool – what the law calls an alter ego. In most cases, the status of a company as a separate legal entity apart from its owners, members, or parent corporation must be respected and preserved.  But this rule is not absolute, and you can disregard the separate status of a company when an owner, member, or parent corporation disregards the separate status of an entity and makes it or uses it as a mere instrumentality or tool for conducting his own affairs and that such control is used to commit fraud or perpetrate the violation of a statutory or other legal duty.

Should you find that Balthazar has proved this claim by a preponderance of the evidence, the law requires you to disregard the separate status of Beale Street West Palm and hold Mr.

Peters, Ms. Peters, and/or Beale Street Corporate legally responsible for the West Palm LLC's acts.

To decide whether to treat Beale Street West Palm as the alter ego of Mr. Peters and/or Ms. Peters, you should consider:

(a) the purpose for which Beale Street West Palm was formed or acquired by Mr. Peters and/or Ms. Peters;

(b) whether Beale Street West Palm kept books and records, held regular meetings, and observed other corporate legal formalities;

(c) whether Beale Street West Palm funds were comingled with Mr. Peters' and/or Ms. Peters' funds;

(d) the activity or inactivity of others as officers or directors in Beale Street West Palm's business affairs; and

(e) any other factors the evidence disclosed tending to show that Beale Street West Palm was or was not operated as an entity separate from Mr. Peters and/or Ms. Peters.

To decide whether to treat Beale Street West Palm as the alter ego of Beale Street Corporation, you should consider:

(a) Whether Beale Street Corporate caused the formation of Beale Street West Palm;

(b) Whether Beale Street Corporate and Beale Street West Palm have common ownership, or directors or officers in common;

(c) Whether the business purpose or function of Beale Street West Palm is separate and distinct from Beale Street Corporate;

(d) Whether the two entities kept separate corporate books and records (even though they may have filed joint tax returns as required by law);

(e) Whether Beale Street Corporate finances Beale Street West Palm or pays Beal Street West Palm's salaries and other expenses;

(f) Whether Beale Street West Palm's funds were comingled – or not mingled – with Beale Street Corporate's funds; and

14

(g) Any other factor the evidence disclosed tending to show that Beal Street West Palm was or was not operated as an entity separate from its parent, Beale Street Corporate.

You should consider all these factors.  No single factor is determinative.

### Civil Conspiracy

Balthazar has alleged a claim for civil conspiracy against all of the Defendants.  A successful claim for civil conspiracy requires Balthazar to prove the following by a preponderance of the evidence:

    (1)     An agreement between two or more of the Defendants;

    (2)     To do an unlawful act or to do a lawful act by unlawful means;

    (3)     The doing of some overt act in pursuance of the agreement; and

    (4)     Damage to Balthazar as a result of the acts performed pursuant to the conspiracy.

Defendants acted "in concert," for purposes of establishing a conspiracy, if they acted in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result.

Each conspirator need not act to further a conspiracy; each only needs to know of the scheme and assist in it in some way to be held responsible for all of the acts of his or her coconspirators.

### Violation of Florida's Revised Uniform Partnership Act ("RUPA")

Balthazar has alleged a claim against Beale Street and Beale Street West Palm for violations of Florida's Revised Uniform Partnership Act ("RUPA").  A successful claim under RUPA requires Balthazar to prove the following by a preponderance of the evidence:

    1)  A partnership;

    2)  Violation of a duty to the partnership; and

3)  Resulting harm.

A "partnership" means an association of two or more persons to carry on as co-owners a business for profit whether or not the persons intended to form a partnership.

A partner is entitled to reimbursement from the partnership for payments made by that partner in the ordinary course of the business of the partnership or for the preservation of its business.

### Negligent Misrepresentation

Balthazar has alleged claims against all of the Defendants for negligent misrepresentation.  For Balthazar to prevail on its negligent misrepresentation claims, it must prove the following by a preponderance of the evidence:

1)  A misrepresentation of material fact;

2)  The person making the statement either knew or should have known was false or made without knowledge of truth or falsity;

3)  The person making the statement intended to induce another to act on the misrepresentation; and

4)  Resulting injury to a party acting in justifiable reliance on the misrepresentation.

A "misrepresentation" is simply a statement that is not true.

A "material fact" is one that is of such importance that a claimant would not have entered into the transaction but for the false statement.

A claimant is "justified" in relying on a misrepresentation of fact if, under the circumstances, the claimant's conduct in reliance on the misrepresentation was not utterly unreasonable.

## **Fraud**

Balthazar has alleged claims against all of the Defendants for fraud.  For Balthazar to prevail on its fraud claims, it must prove the following by a preponderance of the evidence:

1) A false statement of fact;

2) The party making the false statement knew it was false at the time it was made;

3) The false statement was made for the purpose of inducing another to act in reliance on the statement;

4) Action by the other party in reliance on the correctness of the representation; and

5) Resulting damage or injury to the party relying on the statement.

A claim for Fraud is different than a claim for negligent misrepresentation.  If it is shown that a Defendant made a material misrepresentation and/or omission with the intention that the claimant rely upon it, then, under the law, the claimant may rely upon the truth of the representation even though its falsity could have been discovered had the claimant made an investigation, unless the claimant knows the representation to be false or its falsity is obvious to it.

## **Violation of Florida's Securities and Investor Protection Act ("FSIPA")**

Balthazar has alleged a claim against each of the Defendants for violation of the Florida Securities and Investor Protection Act ("FSIPA").   To recover for a violation of FSIPA, Balthazar must prove the following by a preponderance of the evidence:

In connection with the offer, sale, or purchase of any investment or security:

1) That a defendant made a misstatement or omission,

2) of a material fact,

3)  that the defendant knew or should have known was either false or that the material fact should have been disclosed,

4)  upon which Balthazar relied.

Alternatively, a FSIPA violation occurs where one of the Defendants engaged in any transaction, practice, or course of business, in connection with the offer, sale, or purchase of any investment or security which operates as a fraud or deceit upon Balthazar.

### Breach of Contract

Balthazar claims that the parties entered into a contract and has alleged a claim against Beale Street and Beale Street West Palm for breach of contract.  A successful claim for breach of contract requires Balthazar to prove the following by a preponderance of the evidence:

1)  A valid contract (whether written, oral, or based on conduct of the parties);

2)  Breach of the contract (which can be thought of as a violation); and

3)  Balthazar was damaged as a result of the violation.

To prove that a valid contract was created, Balthazar must prove all of the following:

1)  The essential contract terms were clear enough that the parties could understand what each was required to do;

2)  The parties agreed to give each other something of value; and

3)  The parties agreed to the essential terms of the contract.

When you examine whether the parties agreed to the essential terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement.  The making of a contract depends only on what the parties said or did.  You may not consider the parties' thoughts or unspoken intentions.

A valid contract between parties does not have to be in writing.  A valid contract can be oral, meaning it is based on the words of the parties, and a valid contract can also be based on the

parties' conduct or actions. Oral contracts are just as valid as written contracts. Contracts created by conduct are just as valid as contracts formed with words.

## Unjust Enrichment

Balthazar has alleged a claim for unjust enrichment against Beale Street and Beale Street West Palm, in the alternative to its breach of contract claim. A successful claim for unjust enrichment requires Balthazar to prove by a preponderance of the evidence that:

1) Balthazar conferred a benefit on one of the corporate defendants;

2) That defendant voluntarily accepted and retained that benefit; and

3) It would be inequitable or unfair for the defendant to retain the benefit without paying the value of the benefit to Balthazar.

## Civil Theft

Balthazar has alleged a claim against Beale Street for civil theft. A successful claim for civil theft requires Balthazar to prove the following by clear and convincing evidence:

1) Beale Street obtained, used, or attempted to obtain or use Balthazar's property;

2) With the criminal intent to deprive Balthazar (either temporarily or permanently) of a superior right to that property or a benefit from that property; and

3) Beale Street's actions were a legal cause of loss to Balthazar.

## Defendants' Affirmative Defenses

If you find that the greater weight of the evidence ultimately supports one or more of Balthazar's claims, then you must consider the affirmative defenses raised by the Defendants. In this case, the Defendants assert the affirmative defenses of set-off, BM's actions created an impossibility of performance, BM repudiated any agreement by their actions, BM has waived

any right to recovery, BM is estopped from seeking any recovery, BM's actions were negligent and contributed to any claimed loss, BM assumed the risk associated with a business transaction, and that BM can not recover for any loss due to its unclean hands.

Even if Balthazr proves its claims by a preponderance of the evidence (or by clear and convincing evidence for civil theft), the Defendants can prevail in this case if they prove an affirmative defense by a preponderance of the evidence. When more than one affirmative defense is involved, as it is here, you should consider each one separately.

To be clear, each affirmative defense asserted by Defendants does not apply to every cause of action asserted by Balthazar. In other words, depending on the specific claims that you, the jury, find that Balthazar has satisfied its burden of proof, will determine which affirmative defenses you should consider. Additional instructions on the applicability of each affirmative defense will be provided.

### Affirmative Defense of Set-Off

If you find that Balthazar proved its claims, you must consider Beale Street West Palm's defense of "set off." A set off allows entities that owe each other money to apply their mutual debts against each other.

To apply a set off, you must: First, you must find that Balthazar is entitled to damages. Second, you must find that Beale Street West Palm is also entitled to damages. Then, you must reduce Beale Street West Palm's recovery (if any) by the degree of damages owed to Balthazar (if any) and award the net amount of the calculated damages.

For example: If you find that Beale Street West Palm suffered $100,000 of damages, and you further found that Balthazar suffered $50,000 of damages, then Beale Street West Palm's $100,000 in damages would be "sef off" by Balthazar's $50,000 in damages. Because Beale

Street West Palm's damages award exceeded the damages of Balthazar in this example, the resulting damages award in this example would be $50,000 to Beale Street West Palm.

Here is another example: If you find that Beale Street West Palm suffered $50,000 of damages, and you further found that Balthazar suffered $100,000 of damages, then Beale Street West Palm's $50,000 in damages would be "set off" by Balthazar's $100,000 of damages. Because Balthazar's damages award exceeded the damages of Beale Street West Palm's in this example, the resulting damages award in this example would be $50,000 to Balthazar.

By using $50,0000 and $100,000 as examples, I don't mean to suggest that either Beale Street West Palm or Balthazar is necessarily entitled to damages, or if they are, to what degree. That's a decision entrusted to you and it's up to you to determine the amount, if any, of the set off.

## Affirmative Defense of Impossibility of Performance

The Defendants assert the affirmative defense of impossibility of performance as a defense to Balthazar's claim of Breach of Contract. If you find that a contract existed between the parties, then, To prevail on this defense, Beale Street and Beale Street West Palm must prove by a preponderance of the evidence the following:

1)   that Beale Street's or Beale Street West Palm's performance of the contract obligations that Balthazar claims to have been breached was rendered impossible;

2)   Neither Beale Street nor Beale Street West Palm assumed the risk of impossibility, and

3)   Neither Beale Street nor Beale Street West Palm could have acted to prevent the event rendering the performance impossible.

### Affirmative Defense of Repudiation

The Defendants assert the affirmative defense of Repudiation, as a defense to Balthazar's claims of Breach of Contract.   To prevail on this defense, the Defendants must prove the following by a preponderance of the evidence:

     1.     The existence of a valid contract;

     2.     Balthazar breached that contract by clearly and positively indicating, by     words or conduct, or both, that it would not perform the contract; and

     3.     The Defendants were willing and able to perform the contract at the time Balthazar breached the contract.

### Affirmative Defense of Waiver or Estoppel

The Defendants assert the affirmative defense of Waiver or Estoppel as a defense to Balthazar's claims of Breach of Contract. To prevail on this defense, the Defendants must prove the following by a preponderance of the evidence:

     1.     Balthazar's right to have shared in any profit of the Joint Venture actually existed;

     2.     Balthazar knew or should have known it had the right to have the Defendants and it share in profits equally, and

     3.     Balthazar freely and intentionally gave up its right to have any future sharing of profit when it ceased operating the Restaurant.

A waiver may be oral or written or may arise from conduct which shows that Balthazar gave up that right. If the Defendants prove that Balthazar gave up its right to share in profits realized from the operation of the Restaurant, then the Defendants were not required to perform their obligations.

### Affirmative Defense of Equitable Estoppel

The Defendants assert the affirmative defense of Equitable Estoppel as a defense to Balthazar's claims of Breach of Contract. To prevail on this defense, the Defendants must prove the following by a preponderance of the evidence:

1. BM took action by failing to finalize an agreement regarding the joint venture, and acting in direct contradiction to the agreed upon terms of the March 17, 2017 meeting.

2. BM concealed or was silent about its lack of authority to use the     name "BOWERY" or any derivative thereof as it was a trademarked name to which BM had no rights at a      time when it knew of that fact.

3. When that was discovered, BM chose to abandon the restaurant, and then institute this action;

4. The Defendants relied in good faith upon BM's representations regarding the name BOWERY;

and

5. The Defendant's reliance on BM's actions and words caused the Defendants to change their position for the worse.

### Affirmative Defense of Contributory Negligence

The Defendants assert the affirmative defense of contributory negligence as a defense to BM's claims negligent misrepresentation. To prevail on this defense, the Defendants must prove the following by a preponderance of the evidence:

1) That  BM was itself negligent in its representations regarding the right to use the name "Bowery", and if so,

2)  that negligence was a contributing legal cause of loss or damage to BM.

**Affirmative Defense of Assumption of Risk**

The Defendants assert the affirmative defense of Assumption of Risk as a defense to Balthazar's claims of negligent misrepresenttation and breach of contract. To prevail on this defense, the Defendants must prove the following by a preponderance of the evidence:

(1)   Balthazar had knowledge of the risks associated with doing business or transacting with the Defendants;

(2)   Balthazar appreciated the risk posed by that condition; and

(3)   Balthazar voluntarily exposed itself to that risk.

If you find that Defendants have proven this defense by a preponderance of the evidence, then your verdict will be for Defendants.

**Affirmative Defense of Unclean Hands**

The Defendants assert the affirmative defense of unclean hands as a defense to Balthazar's claim of unjust enrichment.. To prevail on this defense, the Defendants must prove the following by a preponderance of the evidence:

(1) Balthazar acted in way that is inequitable, unfair, and/or dishonest, in essense, that Balthazar acted with "unclean hands" during its business dealings with Beale Street.

2) the conduct of Balthazar was generally connected with the matter in litigation; and

3) affected Beale Street.

Additionally, Beale Street must have been damaged for the "unclean hands" defense to apply. If you find that Beale Street proved this defense, then your verdict shall be for Beale Street.

## Beale Street West Palm's Counterclaims

Beale Street West Palm has the burden of proving its counterclaims by a "preponderance of the evidence." If Beale Street West Palm fails to meet this burden on one of its counterclaims, then you must find in favor of Balthazar on that particular counterclaim.

## Fraud in the Inducement

Beale Street West Palm has alleged a counterclaim against Balthazar for fraud in the inducement. A successful counterclaim for fraud in the inducement requires Beale Street West Palm to prove the following by a preponderance of the evidence:

**1.** Balthazar represented that it had the legal right to use the name "BOWERY" for the restaurant, and that representation was material to the transaction;

**2.** That representation was false;

**3.** Balthazar knew that the representation was false;

**4.** Balthazar made the representation to persuade BEALE STREET WEST PALM to agree to the name change from "Lafayette's";

**5.** BEALE STREET WEST PALM justifiably relied on the representation; and

**6.** BEALE STREET WEST PALM would not have agreed to the change if it had known that the representation was false.

## Negligent Misrepresentation

Beale Street West Palm has alleged a counterclaim against Balthazar for negligent misrepresentation. A successful counterclaim for negligent misrepresentation requires Beale Street West Palm to prove the following by a preponderance of the evidence:

1. Whether BM made a statement concerning a material fact that it believed to be true but which was in fact false;

2. Whether BM was negligent in making the statement because it should have known the statement was false;

25

3.      Whether in making the statement, BM intended or expected that BEALE STREET WEST PALM would rely on the statement;

4.      Whether BEALE STREET WEST PALM justifiably relied on the false statement; and, if so,

5.      Whether the false statement was a legal cause of loss or damage to BEALE STREET WEST PALM.

### Balthazar's Affirmative Defenses to Counterclaims

In response to Beale Street West Palm's Counterclaims, Balthazar asserts certain affirmative defenses, which means that even if Beale Street West Palm proves its counterclaims by a preponderance of the evidence, Balthazar can still prevail in this case if Balthazar proves an affirmative defense by a preponderance of the evidence. When more than one affirmative defense is involved, like in this case, you should consider each one separately. I caution you that Balthazar does not have to disprove Beale Street West Palm's counterclaims, but if Balthazar raises an affirmative defense, the only way it can prevail on that specific defense is if Balthazar proves that defense by a preponderance of the evidence.

Each affirmative defense asserted by Balthazar does not apply to every cause of action asserted by Beale Street West Palm. In other words, depending on the specific claims that you, the jury, find that Beale Street West Palm has satisfied its burden of proof, will determine which affirmative defenses you should consider. Additional instructions on the applicability of each affirmative defense will be provided.

### Affirmative Defense of Set Off

If you find that Beale Street West Palm proved its claim for Fraud in the Inducement and/or Negligent Misrepresentation, you must consider Balthazar's first defense of "set off." A set off allows entities that owe each other money to apply their mutual debts against each other.

To apply a set off: First, you must find that Beale Street is entitled to damages. Second, you must find that Balthazar is also entitled to damages. Then, you must reduce Beale Street West Palm's recovery (if any) by the degree of damages owed to Balthazar (if any) and award the net amount of the calculated damages.

For example: If you find that Beale Street West Palm suffered $50,000 of damages, and you further found that Balthazar suffered $100,000 of damages, then Beale Street West Palm's $50,000 in damages would be "set off" by Balthazar's $100,000 of damages. Because Balthazar's damages award exceeded the damages of Beale Street West Palm's in this example, the resulting damages award in this example would be $50,000 to Balthazar.

Here is another example: If you find that Beale Street West Palm suffered $100,000 of damages, and you further found that Balthazar suffered $50,000 of damages, then Beale Street West Palm's $100,000 in damages would be "sef off" by Balthazar's $50,000 in damages. Because Beale Street West Palm's damages award exceeded the damages of Balthazar in this example, the resulting damages award in this example would be $50,000 to Beale Street West Palm.

By using $50,0000 and $100,000 as examples, I don't mean to suggest that either Beale Street West Palm or Balthazar is necessarily entitled to damages, or if they were, to what degree. That's a decision entrusted to you and it's up to you to determine the amount, if any, of the set off.

### Affirmative Defense of Contributory Negligence

If you find for Beale Street West Palm on its Negligent Misrepresentation claim, then you must next consider Balthazar's defense of "contributory" negligence.

Balthazar claims that Beale Street West Palm Beach was also negligent and that Beale Street West Palm's negligence was a legal cause of its own injury or damage. This is a defensive claim, which requires Balthazar to prove these two facts by a "preponderance of the evidence":

First, you must find that Beale Street West Palm was also negligent.

Second, you must find that Beale Street West Palm's negligence was a legal cause of its own injury or damage.

The law requires you to compare any negligence you find on the part of both parties because, in this case, Balthazar claims that Beale Street West Palm's negligence contributed to its injuries. If you find in Balthazar's favor on this defense, by finding that Beale Street West Palm was also negligent, then it will reduce Beale Street West Palm's recovery (if any) by the degree of its own negligence. This is a legal concept called "contributory negligence"

For example, if you find that Beale Street West Palm was 50% responsible for its own injury, then you must reduce its recovery amount (if any) by that percentage. By using 50% as an example, I don't mean to suggest that Beale Street West Palm was negligent, or if it was, to what degree. That's a decision entrusted to you and it's up to you to determine the percentage, if any, of Beale Street West Palm's negligence.

## Affirmative Defense of Unclean Hands

Balthazar claims that Beale Street West Palm is precluded from recovery for Negligent Misrepresentation under a defense theory known as "unclean hands."

To succeed on this defense, Balthazar must prove that Beale Street West Palm acted in a way that is inequitable, unfair, and/or dishonest as to the controversy at issue – in essense, that Beale Street West Palm acted with "unclean hands" during its business dealings with Balthazar.

In order for this defense to apply, Balthazar must show, by a preponderance of the evidence, that the conduct constituting "unclean hands":

    (1)    was generally connected with the matter in litigation; and

    (2)    affected Balthazar.

Additionally, Balthazar must have been damaged for the "unclean hands" defense to apply. If you find that Balthazar proved this defense, then your verdict shall be for Balthazar.

### Affirmative Defense of Failure to Mitigate Damages

If you find that Beale Street West Palm is entitled to an award of damages in this action on any of its counterclaims, Beale Street West Palm is not entited to recover for those damages which Balthazar proves Beale Street West Palm could have avoided with reasonable efforts or expenditures. In deciding what damages Beale Street West Palm could have avoided, you should consider the reasonableness of Beale Street West Palm's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk, burden, or humiliation.

For example, Balthazar claims that the following facts should affect Beale Street West Palm's recovery (if any) in this matter:

    a)    Beale Street West Palm's decision to close the Restaurant once Balthazar returned control of the premises back to Beale Street West Palm;

    b)    Beale Street West Palm's decision to cancel all future events, which were scheduled at the time Balthazar returned control of the premises back to Beale Street West Palm; and

    c)    The termination of the Lease.

INSTEAD OF,

    (d)    Incurring the cost (if any) to reprint menus and replace signage at the Restaurant to continue operation under a different name; and/or

(e)     Incurring the cost (if any) to advertise live music events on Beale Street's website for (i) marketing and (ii) to solicit ticket sales.

## Affirmative Defense of Waiver or Estoppel

Balthazar claims that it did not have to continue to manage the Restaurant pursuant to the parties' business arrangement because Beale Street West Palm gave up its right to have Balthazar perform this obligation due to Beale Street West Palm's prior bad acts.  This is referred to as the doctrine of "waiver," which means that intentional or voluntary relinquishment of a known right, or actions or conduct which warrants an inference of relinquishment of a known right.

To establish this defense, Balthazar must prove all of the following:

1)     Beale Street West Palm's right to have Balthazar continue to manage the Restaurant pursuant to the parties' business arrangement actually existed;

2)     Beale Street West Palm knew or should have known that it had the right to have Balthazar continue managing the Restaurant; and

3)     Beale Street West Palm freely and intentionally gave up its right to have Balthazar continue managing the Restaurant.

A waiver may be oral or written or may arise from conduct which shows that Beale Street West Palm gave up that right.

If Balthazar proves that Beale Street West Palm gave up its right to have Balthazar continue to manage the Restaurant, then Balthazar was not required to perform this obligation.

## Affirmative Defense of Assumption of Risk

Balthazar claims that Beale Street West Palm assumed the risk of its alleged damages by failing to exercise due care and placing itself in a situation with knowledge of the risks associated thereof.  This defense is known as "assumption of risk."  To find for Balthazar on this defense, Balthazar must prove:

(1)     Beale Street West Palm had knowledge of the risks associated with changing the name of the Restaurant to "Bowery Palm Beach";

(2)     Beale Street West Palm appreciated the risk posed by that condition by
virtue of its experience operating restaurants by various names nationwide,
including in West Palm Beach, Florida; and

(3)     Beale Street West Palm voluntarily exposed itself to that risk.

If you find that Balthazar has proven this defense by a preponderance of the evidence,
then your verdict will be for Balthazar.

### Damages - Plaintiff

If you find for Balthazar on any of its claims, you must consider the matter of damages.
Generally, you should award an amount of money that the preponderance of the evidence shows
will fairly and adequately compensate Balthazar for its damages.   You should consider the
following types of damages:

### Compensatory Damages

That amount of money you find to be justified by a preponderance of the evidence as full,
just and reasonable compensation for all of Balthazar's damages caused by any one or all of the
Defendants.  For example, in the case of damages for breach of contract, compensatory damages
is that amount of money which will put Balthazar in as good a position as it would have been if
the Defendants had not breached the contract and which naturally result from the breach.

### Damages for Lost Profit/Value of the Partnership/Business

As a matter of law, a business can recover lost prospective profits regardless of whether it
is established or has any track record, if the party seeking damages proves that (1) the
defendant's action caused the damage and (2) there is some standard by which the amount of
damages may be adequately determined.   Thus, to be entitled to recover its lost value of the
partnership, Balthazar must prove both of the following:

(1) Defendants' actions caused Balthazar to lose its value of the partnership/business; and

(2) Balthazar can establish the amount of its lost value with reasonable certainty.

As a matter of law, the future lost profits calculation and analysis presented by Plaintiff's Expert Witness, Sheri Fiske Schultz, is not speculative.  The mind of a prudent person would be satisfied that her damages calculations are not the result of speculation or conjecture.

### Statutory Damages

If you find for Balthazar on its civil theft claim, Balthazar is entitled to an amount of money for threefold the actual damages it sustained.  If you find for Balthazar on its FSIPA claim, Balthazar is entitled to recover an amount of money equal to the difference between: (1) the consideration paid for the security or investment, plus interest thereon at the legal rate from the date of purchase; and (2) the value of the security or investment at the time it was disposed of by Balthazar, plus the amount of any income received on the security or investment by Balthazar.

### Damages – Counter-Plaintiff, Beale Street West Palm

Conversely, if you find for Beale Street West Palm on any of its counterclaims, you must consider the matter of damages.  Generally, you should award an amount of money that the preponderance of the evidence shows will fairly and adequately compensate Beale Street West Palm for its damages.  You should consider the following types of damages:

### Compensatory Damages:

That amount of money you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of Beale Street West Palm's damages caused by Balthazar.

## Present Cash Value of Future Damages

Any amount of damages which you award for future damages should be reduced to its present money value and only the present money value of these future damages should be included in your verdict.

The present money value of future damages is the sum of money needed now which, together with what that sum will earn in the future, will compensate the claimant for these damages as they are actually experienced in future years.

## Duty to Deliberate – Multiple Claims

In your deliberations, you will consider and decide distinct claims. Although these claims have been tried together, each is separate from the others, and each party is entitled to have you separately consider each claim as it affect that party. Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would had each claim been tried before you separately.

## Duty to Deliberate When Both Plaintiff and Defendants Claim Damages

Members of the jury, you will now deliberate in the jury room about the case in order to come to a verdict.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors.  So, you must discuss the case with one another and try to reach an agreement. While you are discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your

honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to determine the truth from the evidence in the case.

### Election of Foreperson; Explanation of Verdict Form

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.   The verdict form contains questions and directions for answering them.  In answering the questions, you must apply the law in the instructions that I gave you to the facts that were proved by the evidence.   You can also refer to the Jury Instructions for guidance on the law applicable to the subject matter covered by each question.

The questions are organized by claim, first asking whether you found that a party is liable for the particular claim.  If your answer to the first question is yes, then you are instructed to answer the second question, asking you to identify which party is liable by selecting all that apply from a list.  Finally, you are instructed to consider the applicable affirmative defenses and enter your final verdict on that particular claim.  Once you have completed the questions for each claim, the verdict form will then instruct you to fill in a damages worksheet, where you will apportion the damages (if any) to those parties you determined were liable.

You must all agree to each answer before you complete the verdict form.  After you reach a verdict, your foreperson shall complete the verdict form by inserting all necessary answers in the form.

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.