**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 17-cv-81214-BB**

BALTHAZAR MANAGMENT, LLC, a Florida
Limited Liability Company,

   Plaintiff,

vs.

BEALE STREET BLUES COMPANY, INC., a
Tennessee-For-Profit Corporation; BEALE
STREET BLUES COMPANY – WEST PALM
BEACH, LLC, a Florida Limited Liability
Company; STEWART THOMAS PETERS, an
individual; ELIZABETH PETERS, an
individual; and TODD BECKER, an individual,

   Defendants.

_____/

**PLAINTIFF BALTHAZAR MANAGEMENT, LLC'S VERIFIED MOTION**
**FOR ATTORNEYS' FEES AND OTHER NON-TAXABLE EXPENSES**

Plaintiff Balthazar Management, LLC ("Plaintiff" or "Balthazar"), by and through

undersigned counsel, and pursuant to Rule 54, Federal Rules of Civil Procedure, Rule 7.3, Local

Rules for the United States District Court for the Southern District of Florida, and the Final

Judgment entered by the Court on December 6, 2018 [ECF No. 332], files this Verified Motion

for Attorneys' Fees and Other Non-Taxable Expenses ("Motion") against Defendants Beale Street

Blues Company, Inc. ("Beale Street"), Beale Street Blues Company – West Palm Beach, LLC

("Beale Street West Palm"), and Stewart Thomas Peters ("Mr. Peters"), (collectively,

"Defendants"). In support of this Motion, Plaintiff states as follows:



## PRELIMINARY STATEMENT

Balthazar seeks an award for its reasonable attorneys' fees incurred in this action. To address numerous wrongdoings committed by the Defendants in connection with a joint venture partnership to own and operate a restaurant and live music venue in West Palm Beach, Florida, Balthazar sued the Defendants for, *inter alia*: Civil Conspiracy, Negligent Misrepresentation, Fraud, violations of the Florida Revised Uniform Partnership Act ("FRUPA"), violations of the Florida Securities and Investor Protection Act ("FSIPA"), and Civil Theft.  After ten (10) days of trial, the jury entered a verdict in favor of Balthazar on the significant issues in the case and, correspondingly, awarded Balthazar damages in a net total of approximately $1.5 million dollars. Balthazar pled its entitlement to attorneys' fees in the operative complaint and it prevailed on the significant issues that provide the legal basis for the recovery of those fees.

Pursuant to Rule 7.3, Local Rules for the United States District Court for the Southern District of Florida, Balthazar provided Defendants a draft of this Motion and Defendants responded with their objections.  Importantly, Defendants' objections only relate to the issue of *amount*—**Defendants do not object to Balthazar's *entitlement* to its attorneys' fees and other non-taxable expenses**.  Out of the $1,004,716.95 in attorneys' fees originally requested in Balthazar's draft Motion, Defendants set forth specific objections as to a total of $175,128.00 in attorneys' fees.  After conferring with the Defendants regarding their objections, and in an effort to limit the issues to be addressed by the Court, Balthazar further voluntarily reduced its fee request by $45,528.90.

In sum, Balthazar now seeks an award of its reasonable attorneys' fees in the amount of $**959,188.05**.  As set forth more particularly below, this sum is derived by: (1) compiling the billing records for this matter, (2) applying an initial voluntary reduction to certain entries that

2

ShubinBass

undersigned counsel determined were redundant or otherwise unnecessary, (3) a second voluntary reduction to certain entries after conferring with Defendants regarding their objections, and (4) applying a modest contingency multiplier of 1.15 to a portion of those legal fees consistent with both its fee agreement with counsel and the applicable caselaw.  Balthazar also seeks an award of **$102,648.51**—an amount that the Defendants do not contest—for the services rendered by its expert witness, Sheri Fiske Shultz of Fiske & Company, who was an integral member of Balthazar's litigation team and who testified on Balthazar's behalf at trial.

**FACTS AND PROCEDURAL HISTORY**

**A.      Balthazar's Counsel**

Balthazar retained Shubin & Bass, P.A. ("Shubin & Bass"), a Miami-based boutique law firm that currently employs nine (9) attorneys and specializes in complex commercial litigation—particularly in matters involving real estate.  John Shubin and Jeffrey Bass, the firm's founding partners, have been practicing law for approximately twenty-five (25) years and have litigated numerous cases across Florida in both state and federal court.   The firm's litigation experience includes cases such as: *Dusseau v. Metropolitan Dade County Board of County Commissioners*, 794 So. 2d 1270 (Fla. 2001); *The Realty Associates Fund IX, L.P. v. Town of Cutler Bay*, 208 So. 3d 735 (Fla. 3d DCA 2016); and *Bird-Kendall Homeowners' Association v. Metropolitan Dade County,* 695 So. 2d 908 (Fla. 3d DCA 1997).  Both Mr. Shubin and Mr. Bass served primarily in advisory roles throughout this litigation.

The primary attorneys handling this case at its inception were: Lauren Brunswick, Deana Falce, and Joseph Pardo.  In December 2017, and in anticipation of Ms. Brunswick's maternity leave, Attorney Mark Grafton became an active member of the litigation team.  Ultimately, the "trial team" consisted of Deana Falce, Mark Grafton, and Joseph Pardo.  John Shubin and Jeffrey Bass remained actively involved in an advisory capacity throughout the case.  A profile of every

3

ShubinBass

Shubin & Bass attorney that recorded billable time for which Balthazar seeks to recover through this Motion is attached as **Exhibit 1** hereto.

**B.     The Legal Services Agreement**

Balthazar originally contacted Shubin & Bass on June 8, 2017 to retain their legal services. On June 19, 2017, Balthazar and undersigned counsel entered into an agreement for legal services ("Legal Services Agreement," attached hereto as **Exhibit 2)**.  Pursuant to this Legal Services Agreement, Balthazar issued payments for legal services performed by Shubin & Bass as of July 31, 2018.   During the course of this litigation and for reasons fully developed during trial, Balthazar experienced a shortage of cash flow and became unable to continue to pay Shubin & Bass for its legal services beyond those fees.   *See* Affidavit of Karena Kefalas, as Authorized Member of Balthazar, dated January 4, 2019, attached hereto as **Exhibit 3**.

On September 14, 2018, Balthazar and undersigned counsel entered into a contingency fee arrangement for legal services, thereby amending the Legal Services Agreement ("Amended Legal Services Agreement," attached hereto as **Exhibit 4)**.  Under the terms of the Amended Legal Services Agreement, Shubin & Bass agreed that any legal services expended on Balthazar's behalf after July 31, 2018 through trial (the "Contingency Period"), were to be paid to Shubin & Bass contingent on the Final Judgment entered by the Court.  Specifically, Balthazar would not be responsible for paying any additional legal fees accrued during the Contingency Period if Balthazar was not successful in the litigation.  If Balthazar was successful, however, Balthazar would be responsible for all the additional legal fees incurred during the Contingency Period plus 15%, regardless of the amount or collectability of the Judgment.

**C.     Fiske & Company Retained as Balthazar's Economic Damages Expert**

On May 31, 2018, Shubin & Bass retained Fiske & Company to provide expert witness services concerning economic damages, business valuation, trade practices, accounting and

4

ShubinBass ✈

finance.  A copy of the Fiske & Company engagement letter with Shubin & Bass is attached hereto as **Exhibit 5**.  Fiske & Company is a full-service CPA firm that specializes in business valuation and litigation support services.  Specifically, Ms. Sheri Fiske Shultz, the Managing Director of Fiske & Company, was retained to act as Balthazar's expert witness in this case.  Ms. Shultz's C.V. is attached hereto as **Exhibit 6**.

Ms. Schultz was an integral member of the team that litigated this matter.  Ms. Schultz's preparing a detailed expert report (which was admitted into evidence during trial), Defendants took Ms. Schultz's deposition, Ms. Schultz assisted in the preparation for the deposition of Defendants' rebuttal expert, and Ms. Schultz was a key trial witness during Plaintiff's case-in-chief.  Over approximately six months of intensive research, evaluation, drafting, testimony, and other litigation support, Fiske & Company billed a total of **$105,303.51** for its work in this matter.  Copies of Fiske & Company's invoices for services incurred during this litigation are attached hereto as **Exhibit 7**.

### D.       The Hard-Fought Litigation Culminating in the Three-Week Jury Trial

Plaintiff diligently and efficiently worked to meet all court-imposed deadlines to get this case to trial.  Defendants' dilatory litigation tactics, however, caused Balthazar's counsel to expend significant time and additional resources to adequately represent Balthazar's interests before the Court.  Irrespective of whether those tactics were right or wrong, Defendants' conduct and tactics caused a significant increase in Balthazar's legal fees.

### 1.       Defendants' Filed and Dismissed Their Four Motions to Dismiss

Balthazar filed its initial complaint in this case in state court on September 25, 2017.  On October 30, 2017, Defendants elected to remove the case to the United States District Court for the Southern District of Florida. *See* ECF No. 1.  On January 12, 2018, Balthazar filed its Amended Verified Complaint [ECF No. 37], which remained the operative complaint for the remainder of

ShubinBass

the case, despite each Defendant filing a motion to dismiss the Amended Complaint on February 14, 2018, which all included requests for a hearing.  *See* ECF Nos. 51, 52, 53, and 54.   Balthazar filed substantive responses to each of the four (4) motions to dismiss on March 7, 2018 [ECF Nos. 61 - 64].  Less than a week later (i.e., on March 13, 2018), the Court scheduled the motions to dismiss for hearing for March 29, 2018 [ECF No. 65].  The very next day, on March 14, 2018, the Ticktin Law Group, PLLC, filed a notice of appearance on behalf of Defendants [ECF No. 69], and Defendants' initial counsel, Locke Lord LLP, filed a motion for leave to withdraw as counsel for Defendants [ECF No. 70].  Upon entering the case, Defendants' new counsel first sought an extension of time to file Defendants' reply related to the motions to dismiss and to reschedule the hearing [ECF No. 73], which was denied by the Court [ECF No. 74].  Ultimately, Defendants filed their consolidated Reply on March 20, 2018 [ECF No. 75] and then, two days prior to the scheduled hearing, Defendants withdrew their previously filed motions to dismiss.  *See* ECF No. 76.

### 2.      Beale Street West Palm's Counterclaim, Amended Multiple Times

Defendants Beale Street and Beale Street West Palm initially filed a one-count counterclaim against Balthazar on November 29, 2017 (subsequently renewed on February 15, 2018 in response to Balthazar's Amended Complaint).  *See* ECF Nos. 22 and 56.  Beale Street West Palm then amended its counterclaim three times, changing its legal strategy with each amendment, adding new causes of action, and attempting to add Balthazar's individual members as individual counter-defendants.  *See* ECF Nos. 80, 109, and 123.  Based upon the nature of the amendments, Balthazar responded to, moved to dismiss, or moved to strike each amended counterclaim that was filed and, consequently, each iteration of Defendants' shifting theory of the case.  *See* ECF Nos. 31, 60, 90, 112, and 130.

On July 2, 2018, despite the deadline for adding parties to the lawsuit having previously expired more than six months prior (on January 30, 2018 [ECF No. 24]) and the Court's Order to

ShubinBass

Serve [ECF No. 96], Beale Street West Palm filed *another* motion, seeking leave to sue Balthazar's principles individually [ECF No. 120], to which, again, Balthazar had to respond [ECF No. 126], and which the Court properly rejected as belated [ECF No. 131].  Defendants' Answer to the Amended Complaint asserted 27 affirmative defenses to Plaintiff's claims.  *See* ECF No. 125.

### 3.      **Defendants' Repeated Discovery Violations**

Defendants' hide-the-ball tactics during discovery made it necessary for Plaintiff to file *three* motions to compel.  *See* ECF Nos. 160, 199, and 221.  On August 20, 2018, the Court granted (in part) Balthazar's first motion to compel and ordered that Defendants produce documents.  *See* ECF No. 191.  It was only in response to Balthazar's unwavering commitment to force Defendants to produce responsive documents that Defendants finally did produce such documents; but for Balthazar's vigilant trial advocacy, some critical (and clearly responsive) trial exhibits would not have been discovered.  *E.g.*, Pl. Tr. Exs. 260-262.

Moreover, Defendant Mr. Peters appeared for his first deposition as the corporate representative of Beale Street and Beale Street West Palm without sufficient preparation.  As a result, on August 20, 2018, the Court ordered Beale Street and Beale Street West Palm to produce an *adequately* prepared corporate representative for a second deposition.  *See* ECF No. 191.  At the Defendants' insistence, that second deposition took place in Memphis, Tennessee.

On October 23, 2018 (i.e., 14 days before calendar call in this matter), Defendants produced a single pdf file consisting of over 10,700 bates stamped pages that included new documents produced for the first time.  Embedded within the more than 10,000 pages of bates stamped production were hundreds of additional hyperlinked attachments which amounted to thousands of additional pages of production. This production, of course, required significant attorney time to review and cross reference against previously-produced documents.

ShubinBass

### E.      The Result—Jury Verdict and Final Judgment in Favor of Balthazar

Following a jury trial that spanned ten trial days, the jury entered a verdict in favor of Balthazar on its claims for, *inter alia*, Civil Conspiracy, Negligent Misrepresentation, and Fraud (against Mr. Peters, Beale Street, and Beale Street West Palm), as well as FRUPA (against Beale Street and Beale Street West Palm), FSIPA (against Mr. Peters and Beale Street), and Civil Theft (against Beale Street).    The jury awarded damages against the Defendants as follows: $1,120,000.00 against Beale Street, $50,000.00 against Beale Street West Palm, $320,000.00 against Mr. Peters, and $10,000 against Mr. Becker.   On December 6, 2018, the Court entered a final judgment consistent with the jury's verdict ("Final Judgment"), and expressly reserved jurisdiction to award attorneys' fees and costs.  *See* ECF No. 332.

### F.      Balthazar's Good Faith Efforts to Resolve the Issues Presented in this Motion

#### 1.      Balthazar's Initial Voluntary Reduction to its Fee Request

In preparing this fee petition, Balthazar's counsel diligently reviewed their time records (attached hereto as **Exhibit 8** (time billed directly to client, from June 12, 2017 to July 31, 2018) and **Exhibit 9** (time recorded during the Contingency Period, from August 1, 2018 through December 31, 2018))[1] and reduced certain fees incurred in connection with litigating this case in an effort to be conservative and minimize disputes.  Specifically, undersigned counsel voluntarily reduced its fee request by an initial amount of $10,055.25.  This was accomplished by **subtracting out *all* time entries recorded by the following individuals**:

- Salvatore Fasulo, Esq. [2 hours at $525 per hour = $1,050.00]
- Liana Kozlowski, Esq.  [.60 hours at $250 per hour = $150.00]
- Emily Vaughan, Paralegal [4.3 hours at $115 per hour = $494.50]
- Alannah Shubrick, Law Clerk [16.70 hours at $135 per hour = $2,254.50]
- Jason Hedges, Paralegal [25.6 hours at $75 per hour = $1,920.00]
- Gabriel Corzo, Paralegal [33.45 hours at $85 per hour = $2,843.25]

---

[1]      By attaching Shubin & Bass's legal billing records (Exhibits 8 and 9), Balthazar expressly states that this act should not be construed in any way as a waiver of its attorney client privilege.



- Frank Cantillo, Paralegal [15.8 hours at $85 per hour = $1,343.00]

### 2.      Defendants' Limited Objections to the Draft of this Motion

Pursuant to Rule 7.3, Local Rules for the United States District Court for the Southern District of Florida, a draft of this Motion was served, but not filed, on Defendants on January 4, 2019 ("Draft Motion").  *See* ECF No. 345.  The Draft Motion attached reports for all legal billing recorded by Shubin & Bass during this litigation (Exhibits 8 and 9).  On January 28, 2019, counsel for Defendants emailed undersigned counsel a Microsoft Excel document titled "Objections to Time Sheets," in which Defendants' set forth their objections to Balthazar's requested attorneys' fees ("Defendants' Objections").  Defendants' Objections is attached hereto as **Exhibit 10**.

Defendants' Objections only relate to the issue of *amount*—**Defendants do not object to Balthazar's *entitlement* to its attorneys' fees and other non-taxable expenses**.  Out of the $1,004,716.95 in attorneys' fees and the $105,303.51 in non-taxable expenses requested in Balthazar's Draft Motion, **Defendants set forth specific objections as to a total of $175,128.00 in attorneys' fees and $0.00 in non-taxable expenses**.  *See* Mot., Ex. 10.  Defendants' only other objections to Balthazar's requested attorneys' fees were to the hourly rates of four Shubin & Bass attorneys (Mr. Bass, Ms. Brunswick, Ms. Falce, and Mr. Shubin) as "unreasonable for Market Place."  *See* Mot., Ex. 10.

After conferring with the Defendants regarding their objections, and in an effort to limit the issues to be addressed by the Court, Balthazar further voluntarily reduced its fee request by $45,528.90.  The specific objections for which Balthazar has agreed to voluntarily reduce its fee request are noted on the spreadsheet attached hereto as **Exhibit 11**.

### 3.      Calculation of Balthazar's Total Fee Request

Balthazar's total fee request (after reduction) is **$959,188.05** and is calculated as follows:

ShubinBass

|  | **Calculation** | **Total** |
|---|---|---|
| Billed to Client | Total [$305,973.25] (–) Initial Reduction [$6,313.25] (–) Second Reduction [$15,892.25] | $283,767.75 |
| Contingency | Total [$616,835.00] (–) Initial Reduction [$3,742.00] (–) Second Reduction [$25,771.00] = $587,322.00 (x) Contingency Multiplier [1.15] | $675,420.30 |
| **TOTAL** | Billed to Client (+) Contingency | **$959,188.05** |

## MOTION AND MEMORANDUM OF LAW

### I.   APPLICABLE LEGAL STANDARD

#### A.   Attorneys' Fees

"Determining a plaintiff's entitlement to attorney fees entails a three-step process." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000); *Gray v. Fla. First Fin. Grp., Inc.*, 359 F. Supp. 2d 1316, 1318 (M.D. Fla. 2005).   First, the Court must determine whether Plaintiff is a prevailing party. *Gray*, 359 F. Supp. 2d at 1318.   Second, the Court must calculate the lodestar, which is the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. *Id.; see also Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985) (adopting the federal "loadstar" approach to determining reasonable attorneys' fees), holding modified by *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828 (Fla. 1990).[2]   Finally, the trial court must determine whether a "contingency risk factor" multiplier is appropriate. *See Nalasco v. Buckman, Buckman & Reid, Inc.*, 171 So. 3d 759, 762 (Fla. 4th DCA 2015).[3]   As our nation's

---

[2]     The "time spent by paralegals may be included as attorney hours in a lodestar figure." *Freed By Freed v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 05-80335-CIV, 2005 WL 8156037, at *5 (S.D. Fla. Aug. 24, 2005) (citing *Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1258 (M.D. Ala. 2000) ("Reasonable attorney's fees include the compensation of paralegals and law clerks at the prevailing market rate")).

[3]     *See also Quanstrom*, 555 So. 2d at 834 (holding that attorneys' fees may be adjusted in a particular case based on such factors as the contingent nature of ultimate success in litigation, and the quality of the attorney's work and that courts may apply an attorneys' fees multiplier of 1 to 2.5 in tort and contract cases after evaluating various factors); *Norman v. Housing Auth. of*

10



high court explained in *Hensley v. Eckerhart,* 461 U.S. 424 (1983):

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley,* 461 U.S. at 435-36 (internal citation and footnote omitted).

Where the claims litigated are "inextricably intertwined or involve a common core of facts, an award of attorney's fees may be appropriate as to the entire litigation." *Schoenlank v. Schoenlank*, 128 So. 3d 118, 121 (Fla. 3d DCA 2013) (internal citation omitted).[4] Ultimately, the amount of the attorneys' fees award is within the sound discretion of the district court. *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017) ("We review fees and costs awards under an abuse-of-discretion standard.").

### B.      Non-Taxable Costs

Where cost shifting is authorized by statute a party is entitled to recover its reasonable costs that are otherwise non-taxable under 28 U.S.C. § 1920. *See Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1188–89 (11th Cir. 1983) ("Where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply."). A party

---

*Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) (recognizing that it is appropriate to alter the lodestar to reflect attorney success or the lack thereof).

4       *See State Farm Fire & Cas. Co. v. Becraft*, 501 So. 2d 1316, 1319 (Fla. 4th DCA 1986) ("[W]here the bulk of the work involved was intertwined with both issues, so as to make it difficult to separate the time spent, the allowance of fees for the entire service furnished is not error."); *see also 22nd Century Props., LLC v. FPH Props., LLC*, 160 So. 3d 135, 145 (Fla. 4th DCA 2015) ("Since [plaintiff] obtained a most 'excellent' result and the facts underlying the accounting claim entirely overlapped with the claims that prevailed, the trial court did not abuse its discretion by awarding [plaintiff] for time spent on the accounting cause of action.").



seeking to recover expenses not otherwise taxable under 28 U.S.C. § 1920 is to do so via motion under the procedure set forth in the Local Rules. S.D. Fla. L.R. 7.3(a)-(b).

## II. BALTHAZAR IS ENTITLED TO ITS REASONABLE ATTORNEYS' FEES

### A. Statutory Bases for Fees

Balthazar pled its entitlement to an award of its reasonable attorneys' fees in the Amended Complaint. Specifically, Balthazar pled that it was entitled to an award of its reasonable attorneys' fees based on violations of FSIPA (Am. Compl. ¶ 289), the Florida Revised Uniform Partnership Act (Am. Compl. ¶ 217), and the Civil Theft statute (Am. Compl. ¶ 357). Defendants' Objections only relate to the issue of *amount*—**Defendants do not object to Balthazar's *entitlement* to its attorneys' fees and other non-taxable expenses**. *See* Mot., Ex.10.

**FSIPA Fees:** Pursuant to Section 517.211(6), Florida Statutes, "[i]n any action brought under this section, including an appeal, the court shall award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be unjust." § 517.211(6), Fla. Stat. (2018); *see Golub v. J.W. Gant & Assocs.*, 863 F.2d 1516, 1521 (11th Cir. 1989) ("It is undisputed that Fla. Stat. § 517.211(6) entitles the prevailing party in this lawsuit to reasonable attorneys' fees. The award of attorneys' fees is compelled by the statute unless the result would be unjust.").

**FRUPA Fees:** Where a partner breaches a fiduciary duty owed to the partners or partnership (as alleged and proven here), it is within the court's discretion to award attorneys' fees to the partner prosecuting the action. *See Larmoyeux v. Montgomery*, 963 So. 2d 813, 820 (Fla. 4th DCA 2007) (affirming trial court's final judgment taxing attorneys' fees) (citing *Horne v. Aune*, 121 P. 3d 1227, 1236 (Wash. Ct. App. 2005) (noting that "when a partner breaches his fiduciary duties, a fee award is within the trial court's discretion")).

**Civil Theft Fees:** Pursuant to Section 772.11, Florida Statutes, any person who prevails on



a claim for civil theft is entitled to his or her "reasonable attorney's fees and court costs in the trial and appellate courts." § 772.11, Fla. Stat. (2018); *see also Primerica Life Ins. Co. v. Guerra*, No. 16-22330-CIV, 2017 WL 5713927, at *3 (S.D. Fla. Sept. 5, 2017), *R. & R. adopted as modified*, No. 1:16-CV-22330-KMM, 2017 WL 5668045 (S.D. Fla. Sept. 21, 2017).

Because Balthazar prevailed on its claims under FSIPA, FRUPA, and the Civil Theft Statute, Balthazar is entitled to recover its reasonable attorneys' fees incurred in this matter.

### B.      Balthazar's Attorneys' Fees in the Amount of $959,188.05 is Reasonable

Balthazar's counsel efficiently represented Balthazar's interests from inception through trial.  Notwithstanding those efficiencies, the complexities of the case and Defendants' litigation tactics significantly increased the cost of litigation.  Thus, Balthazar's request for its attorneys' fees (which it has voluntarily reduced) is reasonable.

### 1.      Balthazar's Counsel's Hourly Rates Are Reasonable

A reasonable hourly rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citations omitted).  The Court "is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees." *Id.* at 1303.

Attorneys from Shubin & Bass who rendered services in connection with and/or relating to this matter included:[5]

- John K. Shubin, Esq. (billing rate of $700 per hour);
- Jeffrey S. Bass, Esq. (billing rate of $700 per hour);
- Katherine R. Maxwell, Esq. (billing rate of $475 per hour);
- Lauren G. Brunswick, Esq. (billing rate of $415 per hour);
- Deana D. Falce, Esq. (billing rate of $300 to $425 per hour);

---

[5]      The attorneys listed in this section are limited to those that incurred billable time for which Balthazar seeks to recover from Defendants.  As set forth *infra*, other members of the Shubin & Bass team recorded billable time on this matter for which Balthazar has voluntarily eliminated.



- Mark E. Grafton, Esq. (billing rate of $205 to $295 per hour); and
- Joseph I. Pardo, Esq. (billing rate of $215 per hour).

The Shubin & Bass hourly rates are consistent with fees charged by local attorneys of similar trial experience, expertise, and success.  Furthermore, the firm's partners with the highest billable rates, Messrs. Shubin and Bass, billed for less than four percent of the total billable hours in this case (46.30 billable hours for Mr. Shubin and 51.50 for Mr. Bass). *See* Mot., Ex. 9.  The majority of the billable hours were contributed by the lawyers with the lowest billable rates at the firm to accommodate Balthazar and litigate the case efficiently.

Defendants' objections to the hourly rates for four Shubin & Bass attorneys (i.e., Mr. Shubin, Mr. Bass, Ms. Brunswick, and Ms. Falce) are without merit.  Moreover, while Defendants object to Ms. Falce's hourly rate of $425 and assert that it should be in the $300-$400 range, they fail to appreciate that Ms. Falce billed at an hourly rate of $300 for approximately thirteen out of the eighteen months that this litigation was active. (*See* Mot., Exs. 8 and 9).

### 2.      Balthazar's Counsel Performed only Reasonable and Necessary Work

In total, Balthazar's counsel recorded over three thousand hours of legal work relating to this matter.  The number of hours expended on protracted litigation reflects both the case's complexity and the non-moving party's behavior and litigation tactics, which should both be fairly considered as part of the *Hensley* reasonableness assessment.  *See Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 734 (1987) ("[T]he novelty and complexity of the issues raised in a case presumably would be fully reflected in the number of billable hours recorded by counsel.") (quoting *Blum v. Stenson*, 465 U.S. 886, 898 (1984) (internal quotation marks omitted)). Here, the issues were complex, and one or more Defendants fought Balthazar at every step.

### i.      This Case Was Indisputably Complex

On its merits, this case involved a broken business relationship that spanned nearly the

ShubinBass

course of a year.  After motions to dismiss and motions for summary judgment, 23 of 24 total counts of Plaintiff's Amended Complaint proceeded to trial.  *See* ECF No. 251.  Defendants asserted 27 affirmative defenses and Beale Street West Palm asserted a counterclaim that implicated trademark rights.  *See* ECF Nos. 123 and 125.  The jury trial itself took place over ten days; the Parties' Joint Trial Exhibit List contained over 400 exhibits.  *See* ECF No. 300.

### ii.   Defendants' Litigation Conduct Increased Balthazar's Fees

Defendants' litigation tactics further justify the reasonableness and necessity of time billed by Balthazar's counsel during this very active litigation.  *See Powell v. Carey Intern., Inc.*, 547 F. Supp. 2d 1281, 1297 (S.D. Fla. 2008) ("Defendants' conduct in vigorously defending this case did contribute to the price tag on the attorneys' fees award. Defendants' defense necessarily required Plaintiffs' counsel to expend time and effort and such drives up the ultimate charge of attorneys' fees billed to a non-prevailing defendant.").[6]

It is vitally important to recall that Balthazar filed this case in state court. It was the *Defendants'* litigation strategy to remove it to this Court thereby substantially increasing the costs of litigation and, concomitantly, exploiting Balthazar's cash-depleted position (that the Defendants themselves created).  At times, Defendants' tactics were plainly improper. The Court is familiar with much of the Defendants' litigation conduct, which resulted in Orders by the Court on Plaintiff's motions to compel and even prompted the need for a curative instruction about Defendants conduct during trial. *See* Trial Tr. Day 6, 9:9-12, Nov. 21, 2018, ECF No. 317.

To be sure, Defendants' litigation strategy and conduct increased the cost of litigation. Recall, Defendants asserted a counterclaim, which they sought to amend four times; Defendants

---

[6]    *see also Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 956 (E.D. Wis. 2003) (recognizing the rule that a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986)).

ShubinBass

filed separate motions to dismiss and separate motions for summary judgment, requiring separate responses; and Defendants asserted 27 affirmative defenses, many of which were duplicative and/or not proper affirmative defenses.

### 3.      The Application of a Modest Lodestar Multiplier is Warranted

This Court should apply a modest contingency fee risk multiplier of 1.15 (i.e., a fifteen percent enhancement) to the amount of legal fees accrued during the Contingency Period. Importantly, **Defendants do not contest Balthazar's request for a modest contingency fee risk multiplier of 1.15**. *See* Mot., Ex. 10. It is well-established that in contingent fee cases, the Court may apply a multiplier to increase the amount of the attorneys' fees award. *See Quanstrom*, 555 So. 2d at 829-835 (Fla. 1990); *see also Norman*, 836 F.2d at 1302; *accord Nalasco*, 171 So. 3d at 763 (reversing trial court's refusal to consider a multiplier in a claim brought under Chapter 517 of the Florida Statutes). Here, the Amended Legal Services Agreement established that, contingent upon a final judgment entered in favor of Balthazar (regardless of the amount or collectability of the judgment or whether attorneys' fees could be recovered), Balthazar's counsel would be entitled to 1.15 times the amount of the fees billed during the Contingency Period. *See* Mot., Ex. 4.

In *Quanstrom*, the Supreme Court of Florida held that "the trial court should consider the following factors in determining whether a multiplier is necessary: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in *Rowe* are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client." *Quanstrom*, 555 So. 2d at 834. The *Rowe* factors "are essentially the same as those considered by the federal courts in setting reasonable attorneys' fees." *Rowe*, 427 So. 2d at n.5 (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)); *see also Hensley,* 461 U.S. at 429-30 (sanctioning the use of the *Johnson* factors by

16

ShubinBass

federal courts); *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (applying *Johnson* factors). The *Johnson* factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

During the course of this litigation, Balthazar and Shubin & Bass evaluated various litigation financing options to avoid the necessity of entering into a contingency agreement. However, given the amount in dispute, multiple litigation finance firms declined to fund the litigation. Shubin & Bass further evaluated transitioning lead responsibility for this matter to other trial counsel on a contingency basis; this option, however, was similarly determined to be not feasible due to the amount in controversy.

Here, to the extent they are not already subsumed in the reasonableness analysis above, all of the *Johnson* factors support Balthazar's requested lodestar multiplier. Most notably, the following facts all support a modest lodestar multiplier of 1.15: (a) the case involved significant time and labor throughout the entire year of 2018; (b) the trial team (as well as the firm) were all precluded from taking on other work obligations during the pendency of this litigation; (c) the case was indisputably complex (*see* p. 14, *supra*); and (d) the results obtained were excellent (i.e., verdict returned in an amount approximately *fifteen* times higher than the highest pre-verdict settlement offer by Defendants, and approximately *thirty* times higher than the last pre-verdict

ShubinBass

settlement offer by Defendants).[7]

It merits mention that this case presents the archetypal *David v. Goliath* fact pattern, where a very large corporation abuses its position of strength against a very small counter-party who can ill-afford to seek judicial recourse due to the substantial fees and costs one must incur to secure competent counsel to litigate a commercial case in federal court. But for Shubin & Bass's willingness to assume the risks attendant to the Amended Legal Services Agreement, Balthazar could not have afforded to take this case to trial and right the wrongs Defendants committed. *See* Mot., Ex. 3, Kefalas Aff. ¶¶ 5-8. Collectively, these factors easily support the lodestar multiplier Balthazar seeks and readily satisfy the standards for an upward adjustment of 1.15, which is consistent with the Amended Legal Services Agreement.

Accordingly, Balthazar requests an award of $675,420.30 for its reasonable attorneys' fees incurred during the Contingency Period (derived by applying the 1.15 multiplier after the voluntary reductions), plus the $283,767.75 that was billed directly to Balthazar (an amount that also considered Balthazar's voluntary reductions). In total, Balthazar requests an award in the amount of **$959,188.05** for its reasonable attorneys' fees incurred in litigating this matter.

## III.   PLAINTIFF IS ENTITLED TO CERTAIN NON-TAXABLE COSTS EXPENDED
### A.   Basis for Other Non-Taxable Costs

Balthazar is entitled to its reasonable costs incurred in litigating this matter under Section 772.11, Florida Statutes, which provides the statutory remedies for civil theft claims. *See United States v. Bailey*, 288 F. Supp. 2d 1261, 1282 (M.D. Fla. 2003), *aff'd*, 419 F.3d 1208 (11th Cir. 2005) (holding that prevailing party in a civil theft claim "shall recover his costs arising from this

---

[7]   *See Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009) ("Rule 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case.").



action").[8] The costs being sought in this Motion – the monies paid to Balthazar's expert witness, Fiske & Company – were not included in Balthazar's Bill of Costs [ECF No. 338] but were reasonably necessary for litigating this matter. *See Dowdell*, 698 F.2d at 1188–89 ("Where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply."); *Dropbox, Inc. v. Thru Inc.*, No. 15-cv-01741-EMC, 2017 WL 914273, at \*6 (N.D. Cal. Mar. 8, 2017) (granting expert witness fees of over $160,000.00 as non-taxable costs where expert expenditures were "thoroughly documented" and "testimony of these experts would have been highly relevant had this case proceeded to trial"); *see also* S.D. Fla. L.R. 7.3(a) ("The costs and expenses sought in a motion under this paragraph shall not include any cost sought in a bill of costs.").[9]

**B.      Balthazar is Entitled to an Award of Costs Totaling $102,648.51**

In total, Balthazar is requesting that the Court award it $102,648.51 as recoverable non-taxable costs to compensate Balthazar for the monies paid to Plaintiff's expert on business valuation and damages, Fiske & Company. **Defendants do not contest that Balthazar is entitled to this amount**. This amount was derived by taking the total amount invoiced by Fiske & Company ($105,303.51) and subtracting the amounts invoiced by Ms. Fiske that were included in

---

[8]      *See also Nodal v. Infinity Auto Ins. Co.*, 50 So. 3d 721, 724 (Fla. 2d DCA 2010) (holding that prevailing party in civil theft claim "is entitled to recover attorney's fees and costs expended"); *Abu-Ghazaleh v. Chaul*, 36 So. 3d 691, 694–95 (Fla. 3d DCA 2009) ("[T]he Mexican plaintiffs are liable under the civil theft statute for attorney's fees and costs.").

[9]      Balthazar is *not* seeking to recover other categories of litigation related expenses that courts routinely award as recoverable non-taxable costs such as "reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment." *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-60629-CV, 2017 WL 5633312, at \*10 (S.D. Fla. Aug. 7, 2017), *R. & R. adopted*, No. 0:14-CV-60629, 2017 WL 5632811 (S.D. Fla. Aug. 22, 2017) (quotes omitted).

ShubinBass

the Bill of Costs ($2,655.00).[10] Copies of Fiske & Company's invoices for services performed during this litigation are attached hereto as **Exhibit 7**. Sheri Fiske Schultz of Fiske & Company was an integral member of the trial team that litigated this matter. *See* Facts § C, *supra*.

**CONCLUSION**

For the reasons and authorities cited above, Plaintiff respectfully requests that the Court grant this Motion, and specifically enter an order (a) awarding Plaintiff Balthazar Management, LLC its reasonable attorneys' fees in the amount of **$959,188.05** against Defendants Beale Street Blues Company, Inc., Beale Street Blues Company – West Palm Beach, LLC, and Stewart Thomas Peters, jointly and severally, for which sum let execution issue without delay, (b) awarding Plaintiff Balthazar Management, LLC its reasonable expenses paid to its expert witness in the amount of **$102,648.51** against Defendants Beale Street Blues Company, Inc., Beale Street Blues Company – West Palm Beach, LLC, and Stewart Thomas Peters, jointly and severally, for which sum let execution issue without delay, and (c) for such other relief that the Court deems just and proper.

**Certification Pursuant to Local Rule 7.1(a)(3)**

Pursuant to Rule 7.1(a)(3), Local Rules for the United States District Court for the Southern District of Florida, undersigned counsel conferred with counsel for Defendants in a good faith effort to resolve this Motion. As of the filing of this Motion, the parties have been unable to agree to the relief requested herein.

---

[10] If the Court determines that the $2,655.00 included in Balthazar's Bill of Costs is not to be awarded as a taxable cost, then Balthazar respectfully requests that the $2,655.00 be included as a recoverable non-taxable cost, as requested herein.

20



Dated:  February 4, 2019                      Respectfully Submitted,


                                              SHUBIN & BASS, P.A.
                                              46 S.W. First Street, Third Floor
                                              Miami, Florida 33130
                                              Tel.: (305) 381-6060
                                              jshubin@shubinbass.com
                                              dfalce@shubinbass.com
                                              mgrafton@shubinbass.com
                                              jpardo@shubinbass.com
                                              eservice@shubinbass.com

                                     By:      /s/ Deana D. Falce
                                              John K. Shubin
                                              Fla. Bar No. 771899
                                              Deana D. Falce
                                              Fla. Bar No. 84154
                                              Mark E. Grafton
                                              Fla. Bar No. 118233
                                              Joseph I. Pardo
                                              Fla. Bar No. 1003339


## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2019, a true and correct copy of the foregoing was served via electronic mail to all counsel or parties of record on the Service List below.


                                                /s/ Deana D. Falce
                                                     Attorney

## SERVICE LIST

| | |
|---|---|
| Jamie Alan Sasson, Esq. | Serv513@LegalBrains.com |
| Kendrick Almaguer, Esq. | Serv518@legalbrains.com |
| Peter Ticktin, Esq. | Serv512@legalbrains.com |
| **The Ticktin Law Group, PLLC** | |
| *Attorneys for Defendants* | |
| 270 SW Natura Avenue | |
| Deerfield Beach, Florida 33441-1610 | |
| Tel.: (954) 570-6757 | |
| Fax: (954) 570-6760 | |

21



## VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing Verified Motion for Attorneys' Fees and Other Non-Taxable Expenses and the information contained therein and attached hereto is true and correct to the best of my knowledge and belief.

By: _____
Deana D. Falce, Esq.

**STATE OF FLORIDA**          )
                              ) SS:
**COUNTY OF MIAMI-DADE**      )

The foregoing instrument was acknowledged before me this 4 day of February, 2019, by <u>Deana D. Falce, Esq.</u> who is __X__ personally known to me or ____ who produced _____ as a form of identification, did state under oath, that she executed the foregoing for the purposes expressed herein.

_____
Notary Public

JASON GREGORY HEDGES
Notary Public - State of Florida
Commission # GG 250894
My Comm. Expires Aug 20, 2022

MY COMMISSION EXPIRES: _____

ShubinBass